In the
 Missouri Court of Appeals
 Western District

 
 NANCY J. DUCOULOMBIER, 
 
 Appellant,  WD83430
 v.  OPINION FILED:
 
 FORD MOTOR COMPANY,  APRIL 13, 2021
 
 Respondent. 
 
 

 Appeal from the Circuit Court of Clay County, Missouri
 The Honorable David Chamberlain, Judge

 Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge,
 Anthony Rex Gabbert, Judge

 Nancy J. Ducoulombier (“Appellant”) appeals the circuit court’s Judgment granting Ford

Motor Company’s (“Ford”) motion for summary judgment on Appellant’s Petition for Medical

Malpractice and Wrongful Death. Appellant contends the circuit court erred in determining that

the Division of Workers’ Compensation had exclusive jurisdiction over her claim against Ford.

We affirm.

 Background and Procedural Information

 On February 20, 2019, Appellant filed a Petition against Ford and other defendants. The

petition alleged that on February 25, 2016, Appellant’s husband, Emil Albert Ducoulombier, Jr.,
was found unresponsive on a work platform at Ford by fellow employee, Jackson Stubbs. Stubbs

performed chest compressions. Daniel B. Goodman was the second person to reach the side of

Mr. Ducoulombier, and he performed mouth-to-mouth ventilation while Stubbs performed chest

compressions. Shawn Newman and Mike Davis, members of the Ford Emergency Response

Team, were next to arrive at the scene with an AED device which they utilized on Mr.

Ducoulombier twice. At 11:30 a.m., a call was dispatched to Claycomo Fire Department.

 While en route, Claycomo Fire Department EMT-Paramedic, Eric Miles, requested mutual

aid from Pleasant Valley Fire. Upon arrival at the Ford Plant, Claycomo Fire was met by Ford

security and directed to a rendezvous point where they waited for the Ford Emergency Response

Team to bring Mr. Ducoulombier to them. When the Emergency Response Team arrived at the

rendezvous point, it was several minutes before the Claycomo Fire Department EMT-Paramedics

began treatment on Mr. Ducoulombier. EMT-Paramedic Miles and FF/EMT William Wesley Pulse

attempted to establish an airway. Thereafter, Pleasant Valley FF/EMT-Paramedic, Steve Winfrey,

arrived on the scene with Marc Wachter, CPE, at which point EMT-Paramedic Miles assigned

EMT-Paramedic Winfrey the task of establishing an airway.

 Paramedic Winfrey performed oral suctioning on Mr. Ducoulombier, revealing several

tobacco packets in Mr. Ducoulombier’s oropharynx. At the hospital, Mr. Ducoulombier was

declared brain dead. Life support was withdrawn and Mr. Ducoulombier died on February 29,

2016.

 In Count I of Appellant’s petition which alleged “negligence” by Ford, Appellant alleged

that Ford employed or utilized Jackson Stubbs, Douglas Skidmore, Daniel Goodman, Shawn

Newman, Mike Davis, and other unknown members of their Emergency Response Team. Further,

those individuals were at all relevant times agents, servants, and/or employees of Ford directly, or

 2
via the doctrine of “apparent agency,” and, as such, Ford was vicariously liable for the negligent

acts of these individuals.

 Appellant further alleged that Ford failed to have properly trained responders for on-site

medical emergencies, and failed to ensure that its employees were trained or properly trained in

CPR. Also, that Ford failed to equip its employees and Emergency Response Team members with

proper equipment and devices to be used in cardiac life support. Additionally, Ford failed to plan

for interfacing with community EMS responders for on-site emergencies and, in fact, hindered

EMS responders by: 1) Having locked gates preventing emergency responders and vehicles from

entering the Ford plant premises, 2) Having slow security clearance for EMS responders and not

allowing them to access Mr. Ducoulombier in the plant, 3) Preventing EMS responders from

having direct access to Mr. Ducoulombier, and 4) Requiring the EMS responders to wait for an

Emergency Response unit/vehicle to carry Mr. Ducoulombier from within the plant to a

rendezvous point.

 Appellant’s petition further alleged that Ford did not provide enough Emergency Response

Team members within various areas of the plant, and did not provide the Emergency Response

Team members they had with appropriate vehicles to transport injured/ill employees, such as Mr.

Ducoulombier, to a rendezvous point. It was additionally alleged that Ford failed to timely notify

community EMS responders of the medical emergency and request their assistance in rendering

care. Finally, that Ford was “further negligent in various and sundry other respects that are

presently unknown to Plaintiff but that Plaintiff verily believes will be revealed during the

discovery process.” Appellant alleged that, as a direct and proximate result of the carelessness and

negligence of Ford, Mr. Ducoulombier died on February 29, 2016.

 3
 Approximately two years prior to filing this petition, Appellant had filed a claim for

workers’ compensation benefits with the Division of Workers’ Compensation. Therein she alleged

that Mr. Ducoulombier, “during the course and scope of his employment, suffered an injury by

accident at work that resulted in Employee’s death, whereby the workplace event was the

prevailing factor in causing Employee’s death.” On December 28, 2016, Ford filed an “Answer

to Claim for Compensation.” Therein, Ford admitted “that it was operating under and subject to

Missouri workers’ compensation law on 2/25/16,” admitted that Mr. Ducoulombier was Ford’s

employee on that date, but denied “each and every other allegation in the Claim for

Compensation.” This claim remained pending at the time Appellant filed her petition in the circuit

court alleging negligence against Ford.

 On April 17, 2019, Ford answered Appellant’s petition, generally denying the allegations

of negligence. Ford also raised several affirmative defenses, including that “[t]his civil court lacks

statutory authority to proceed with this case because Mr. Ducoulombier has a pending case before

the Missouri Division of Workers’ Compensation.” Ford simultaneously filed a Motion for

Summary Judgment on Count I of Appellant’s petition on this ground. Ford argued that,

Appellant’s workers’ compensation claim was still pending with the Commission, and the

Commission had yet to resolve the “sole remaining issue” of whether Mr. Ducoulombier’s death

arose out of and in the course of his employment. Ford contended that the Commission’s

determination could make Appellant’s claim subject only to the workers’ compensation law and

disallow the civil action. Because the Commission had not yet decided the issue, the circuit court

was prohibited from proceeding with Appellant’s civil action pursuant to both the primary

jurisdiction doctrine and the doctrine of exhaustion of remedies.

 4
 On May 29, 2019, Appellant filed a “Voluntary Dismissal with Prejudice” of her workers’

compensation claim. The Commission subsequently entered an order dismissing the workers’

compensation claim, with prejudice, on June 13, 2019.1

 On August 30, 2019, Appellant then filed a response to Ford’s Motion for Summary

Judgment. Therein she argued that Ford’s Motion for Summary Judgment was moot because,

while it had been filed at a time when Appellant did have a concurrent workers’ compensation

claim pending before the Labor and Industrial Relations Commission, such claim no longer

existed. She argued that, Ford’s “argument is simply that Plaintiff must elect her remedy which

she has since done. Defendant asserts that Plaintiff cannot have two claims concerning the same

cause of action pending in two different jurisdictions. Plaintiff has remedied this by voluntarily

dismissing her workers’ compensation claim with prejudice and thereby electing to pursue her

cause of action in Circuit Court.” She contended that, having been dismissed with prejudice,

“Plaintiff’s workers’ compensation claim has been finally adjudicated thereby making Defendant’s

Motion for Summary Judgment moot.” She also noted that, in answer to Appellant’s claim for

workers’ compensation, Ford denied that Mr. Ducoulombier’s death arose out of and in the course

and scope of his employment with Ford.

 In reply, Ford argued that workers’ compensation law could not be avoided with an election

of remedies, and because Appellant dismissed her workers’ compensation claim with prejudice,

the Commission could never determine that the alleged injury underlying her claim did not arise

out of and in the course of employment, a necessary prerequisite to Appellant being able to proceed

 1
 Appellant also voluntarily dismissed the claims in her civil action against all individual and non-Ford
defendants, leaving only Count I against Ford.

 5
with a civil action. Ford reiterated its contention that the action was, therefore, barred by both the

primary jurisdiction doctrine and the doctrine of exhaustion of administrative remedies.

 On November 8, 2019, the circuit court granted summary judgment in favor of Ford. This

appeal follows.

 Standard of Review

 The standard of review for a preserved appeal challenging the grant of a motion for

summary judgment is de novo. ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d

371, 376 (Mo. banc 1993). In such cases, we do not defer to the trial court’s decision, but instead

use the same criteria that the trial court should have employed in initially deciding whether to grant

the motion. Barekman v. City of Republic, 232 S.W.3d 675, 677 (Mo. App. 2007) (internal citations

omitted). We review the record in the light most favorable to the party against whom judgment

was entered and accord that party the benefit of all inferences which may reasonably be drawn

from the record. Id. Summary judgment is appropriate where the moving party has demonstrated,

on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law.

ITT Com. Fin. Corp., 854 S.W.2d at 376. “Facts set forth by affidavit or otherwise in support of a

party’s motion are taken as true unless contradicted by the non-moving party’s response to the

summary judgment motion.” Id.

 A ‘defending party’ may establish a right to summary judgment by showing: (1)
 facts negating any one of the claimant’s elements; (2) that the party opposing the
 motion has presented insufficient evidence to allow the finding of the existence of
 any one of the claimant's elements; or (3) that there is no genuine dispute as to the
 existence of each of the facts necessary to support a properly pleaded affirmative
 defense.

Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc., 155 S.W.3d 50, 58-59 (Mo. banc 2005).

 6
 As a preliminary matter, Ford contends that Appellant failed to preserve her claim on

appeal by failing to brief with the trial court the arguments she makes to this court. Ford advocates,

therefore, that we decline to review Appellant’s claim. Appellant disagrees that her point is

unpreserved, contending that she raised the issues in oral argument before the trial court.

Nevertheless, Appellant cites plain error review in her opening brief as the applicable standard,

and reiterates in her reply brief that, “All parties agree that the applicable standard of review is

plain error review.”

 “Under Rule 84.13(c), plain errors affecting substantial rights may be considered on appeal,

in the discretion of the court, though not raised or preserved, when the court finds that manifest

injustice or miscarriage of justice has resulted therefrom.” Reed v. Kansas City Missouri School

Dist., 504 S.W.3d 235, 246 (Mo. App. 2016). Plain errors are evident, obvious, and clear. State v.

Johnson, 524 S.W.3d 505, 513 (Mo. banc 2017). “However, plain error review rarely is applied

in civil cases[.]” Reed, 504 S.W.3d at 246. “We will reverse for plain error in a civil case only

where the error is so egregious as to weaken the very foundation of the process and seriously

undermine confidence in the outcome of the case.” McCrainey v. Kansas City Mo. School Dist.,

337 S.W.3d 746, 755 (Mo. App. 2011) (internal quotation marks and citations omitted). “If we

grant plain error review, we first examine whether the claim of plain error is one that, on its face,

establishes substantial grounds for believing that manifest injustice or miscarriage of justice has

occurred.” Strong v. Am. Cyanamid Co., 261 S.W.3d 493, 518 (Mo. App. 2007). If facially

established, we then review the claim to determine whether manifest injustice or a miscarriage of

justice actually occurred. Id.

 7
 We decline Ford’s request to dismiss this appeal and find that, even if Appellant’s claim is

unpreserved or suffers from briefing deficiencies as also alleged by Ford, we will exercise our

discretion and grant plain error review.2

 Point on Appeal – Statutory Authority of Division of Workers’ Compensation

 In her sole point on appeal, Appellant contends the trial court plainly erred in determining

that the Division of Workers’ Compensation had exclusive jurisdiction over her claim. She

contends that her claim was not compensable in any way under the Workers’ Compensation Act

because her case was not premised on an accident occurring at work but, rather, Ford’s failure to

provide proper medical attention after Mr. Ducoulombier was discovered incapacitated. This,

Appellant contends, is a cause of action available to Appellant under straight negligence law in the

circuit court. Appellant argues that, “the allegations contained in Appellant’s Petition are based

on principles of straight negligence and simply have nothing to do with whether this is a

compensable work injury or not.”

 We first note that, while Appellant states that the issue revolves around the “exclusive

jurisdiction” of the Commission, our Supreme Court has recently clarified that the proper

consideration is the “statutory authority” of the Commission to decide certain issues. Cass County

v. Director of Revenue, 550 S.W.3d 70, 73-74 (Mo. banc 2018). “[T]he Commission is [ ] an

administrative body that cannot be constitutionally vested with subject matter jurisdiction.”

Treasurer of the State of Missouri – Custodian of Second Injury Fund v. Mickelberry, 606 S.W.3d

150, 155 (Mo. App. 2020). In Ford’s Motion for Summary Judgment, Ford alleged that Appellant

 2
 We note that, although we review for plain error, because there is no dispute as to the facts necessary to
resolve Ford’s contention in its properly pleaded affirmative defense that the circuit court lacked statutory authority
over Appellant’s claims, we believe the result of this appeal would be the same, whether reviewed for plain error or
under any other standard.

 8
had filed claims in two separate “jurisdictions” -- the Commission and the circuit court -- and the

circuit court lacked “statutory authority” to grant relief on Appellant’s claims. The circuit court

granted Ford’s motion. We, therefore, interpret Appellant’s argument to be that the circuit court

erred in finding that the Commission, and not the circuit court, has “authority” over Appellant’s

claims. See Id.3

 On appeal, Ford offers the same arguments raised with the circuit court in its Motion for

Summary Judgment, which are detailed above. Appellant disputes Ford’s contention that the

doctrine of primary jurisdiction4 is applicable arguing that, despite the Commission having

exclusive statutory authority to determine whether there was an accident arising out of and in the

course of employment, and whether an employee’s injury resulted from an accident or intentional

act, Appellant’s claims “have absolutely nothing to do with whether a workplace injury occurred

or how Mr. Ducoulombier was ‘injured’.” Appellant argues that “it is unknown to this day how

Mr. Ducoulombier became incapacitated on top of the work platform at the Ford plant,” and it

makes no difference how he became incapacitated because the negligence claims are based on

Ford’s “actions (or lack thereof) after Mr. Ducoulombier was found.” Appellant contends that the

fact her claims are unrelated to a workplace injury is evident from her pleadings.

 Analysis

 Count I of Appellant’s petition articulates Ford’s alleged negligence in terms of its actions

after Mr. Ducoulombier was found “unresponsive on a work platform” by a fellow employee.

 3
 While “jurisdiction” cannot be waived, “statutory authority” can be waived if not raised by the parties.
Holden v. Dept. of Commerce and Insurance, 590 S.W.3d 878, 885-886 (Mo. App. 2019). In this case, Ford clearly
did not waive the issue as it was raised by Ford as an affirmative defense to Appellant’s claims and raised again in
Ford’s Motion for Summary Judgment.
 4
 As noted above, “[t]he concept of ‘primary jurisdiction’ is really a question of whether the trial court has a
statutory right to proceed.” Evans v. Empire Dist. Elec. Co., 346 S.W.3d 313, 316 (Mo. App. 2011).

 9
Appellant’s petition alleges that Ford’s negligence caused Mr. Ducoulombier’s death. More

specifically, it alleges that Ford failed to have properly trained responders for Mr. Ducoulombier’s

on-site medical emergency, failed to ensure that the employees who administered CPR to Mr.

Ducoulombier were properly trained, failed to equip its employees and Emergency Response Team

members with proper equipment and devices to be used in Mr. Ducoulombier’s cardiac life

support, and failed to plan for interfacing with community EMS responders for on-site emergencies

thereby hindering EMS responders in reaching Mr. Ducoulombier. Further, that Ford did not

provide enough Emergency Response Team members within various areas of the plant so as to

properly respond to Mr. Ducoulombier, and did not provide the Emergency Response Team

members it had with appropriate vehicles to transport Mr. Ducoulombier to a rendezvous point.

Finally, that Ford failed to timely notify community EMS responders of Mr. Ducoulombier’s

medical emergency and request their assistance in rendering care.

 It is undisputed that Mr. Ducoulombier was present on Ford’s premises the day he was

found incapacitated because he was working as Ford’s employee. “Generally, an employee injured

on the premises of the employer’s business is allowed recovery under the Workers’ Compensation

Law. Recovery is allowed not only when the employee is injured during the normal workday, but

also when the injury occurs while the employee is arriving or leaving the premises.” State ex rel.

Chang v. Ely, 26 S.W.3d 214, 217 (Mo. App. 2000).

 In Cooper v. Chrysler Grp., a plaintiff had a pending Division of Workers’ Compensation

claim for injuries to his back and body from a slip and fall incident that occurred at work. 361

S.W.3d 60, 62 (Mo. App. 2011). The employer admitted that the plaintiff sustained a workplace

accident and provided physical therapy as treatment, but disputed that a subsequent surgery was

necessitated by the accident. Id. When the plaintiff filed suit against the employer in civil court,

 10
the employer raised exclusivity of the Workers’ Compensation Law as an affirmative defense and

moved for summary judgment. Id. The plaintiff countered that the Workers’ Compensation Law

did not provide the exclusive remedy because the employee’s fall was not “the prevailing factor”

in the injury and was not an “accident” as defined in the Workers’ Compensation Law. Id. The

trial court granted summary judgment to the employer. Id.

 On appeal the plaintiff argued that, the Missouri Supreme Court in Missouri Alliance v.

Dept. of Labor, 277 S.W.3d 670 (Mo. banc 2009) (plurality opinion), approved such civil filings

when it found that, if an ‘injury’ comes within the definition of the term ‘accident’ as defined in

section 287.020.2, then it is included within the exclusivity provisions of the act, and recovery can

be had, if at all, only under the terms set out in the act. Id. at 63 (citing Missouri Alliance, 277

S.W.3d at 679). But, if the ‘injury’ is one that is not included within the term ‘accident’ as defined

by the act, then under section 287.120.1, the injury is not subject to the exclusivity provisions of

the act. Id. The plaintiff reasoned that, because Missouri Alliance found that workers excluded

from the act by the narrower definition of ‘accidental injury’ have a right to bring suit under the

common law, the plaintiff was entitled to a civil action because his injury at work was not an

“accident” under the Workers’ Compensation Law. Id. (citing Missouri Alliance, 277 S.W.3d at

680).

 Upon review the Eastern District stated:

 Missouri Alliance did not address or purport to change the primary
 jurisdiction doctrine, under which the Commission has original [authority] to
 determine issues of fact within its [authority]. The primary jurisdiction doctrine
 provides that courts will not decide a controversy involving a question within the
 [authority] of an administrative tribunal until after that tribunal has rendered its
 decision. Pursuant to this doctrine, the Commission has original [authority] to
 determine the fact issues that establish whether or not a claim is subject to the
 [authority] of the Commission. These questions arise (1) where administrative
 knowledge and expertise are demanded; (2) to determine technical, intricate fact

 11
 questions; (3) where uniformity is important to the regulatory scheme. In other
 words, the primary jurisdiction doctrine applies to questions involving
 administrative expertise, technical factual situations and regulatory systems in
 which uniformity of administration is essential. These questions include
 determinations of whether there was an accident arising out of and in the course of
 employment, and whether an employee’s injury resulted from an accident or an
 intentional act. Thus, under the primary jurisdiction doctrine, the circuit court does
 not have the authority to determine the question of whether there was an ‘accidental
 injury’ within the definitions of the Workers’ Compensation Law.

Id. at 63-64 (internal quotation marks and citations omitted).

 Similarly, although there is no allegation of purposeful harm here, in cases where a plaintiff

has alleged that no accident occurred and filed a claim in circuit court alleging deliberate and

purposeful acts by an employer, our Missouri Supreme Court has found that the Labor and

Industrial Relations Commission has sole authority to determine whether an employee’s injury or

death was the product of a work accident or an intentional act by the employer. Killian v. J & J

Installers, Inc., 802 S.W.2d 158, 161 (Mo. banc 1991). Hence, a plaintiff cannot plead around the

Commission’s statutory authority. Id. Appellant does not have an “undefeatable right to have

[her] claim determined in circuit court just because [she] chose to file it there in the first instance,

without regard to whether … [her] claim is otherwise one that Missouri statutes commit to

determination by the Commission.” McCracken v. Wal-Mart Stores East, LP, 298 S.W.3d 473,

478 (Mo. banc 2009).

 The fact that Ford denied, in answer to Appellant’s claim for workers’ compensation, that

“during the course and scope of [Mr. Ducoulombier’s] employment, [he] suffered an injury by

accident at work that resulted in Employee’s death, whereby the workplace event was the

prevailing factor in causing Employee’s death,” does not mean that Ford conceded that the claims

Appellant raised in her negligence petition two years later were outside the purview of the Workers’

Compensation Law. In Appellant’s petition she alleges that, after Mr. Ducoulombier was found

 12
incapacitated, EMT-Paramedic Winfrey was assigned the task of establishing an airway for Mr.

Ducoulombier, and after performing oral suctioning discovered “several tobacco packets” in Mr.

Ducoulombier’s oropharynx. “Accident” is defined in the Workers’ Compensation Law as “an

unexpected traumatic event or unusual strain identifiable by time and place of occurrence and

producing at the time objective symptoms of injury caused by a specific event during a single work

shift,” but excludes compensation if work was merely a “triggering or precipitating factor.” §

287.020.2, RSMo Cum. Supp. 2014. Further, an “injury” is not deemed to arise out of and in the

course of the employment if it comes “from a hazard or risk unrelated to the employment to which

workers would have been equally exposed outside of and unrelated to the employment in normal

nonemployment life.” § 287.020.3(2)(b). Hence, from a practical standpoint and hypothetically

speaking, if Ford believed Mr. Ducoulombier’s injury and subsequent death was caused by choking

on tobacco packets and such was unrelated to his employment, Ford might have been expected to

deny that an accident and/or injury occurred which arose out of and in the course of Mr.

Ducoulombier’s employment.5 It does not follow that, when Appellant claimed two years later

that Mr. Ducoulombier’s death was not caused by a work accident or injury at all but, rather, Ford’s

failure to provide proper medical attention after Mr. Ducoulombier’s incapacitation, that Ford had

conceded that the Workers’ Compensation Law was inapplicable to that claim and/or waived the

ability to make such claim in Appellant’s civil suit. To the contrary, Ford properly and timely

asserted the Act’s applicability as an affirmative defense in answer to Plaintiff’s civil suit.

McCracken, 298 S.W.3d at 479. This assertion, and Ford’s subsequent motion for summary

 5
 Using this same hypothetical, if it was discovered that a piece of machinery at the Ford Plant hit Mr.
Ducoulombier and caused him to inhale the tobacco packets which resulted in injury and death, or that the condition
of the platform caused him to slip and fall and resulted in him inhaling the tobacco packets, then the position and
posture of the parties might have changed.

 13
judgment, placed the issue of whether Appellant’s claim involved the employer/employee

relationship, thereby implicating the Workers’ Compensation Law, squarely before the circuit court

for determination. Id.

 Appellant contends that the cause of Mr. Ducoulombier’s incapacitation, which occurred

while he was working, is completely irrelevant to an inquiry into whether the Labor and Industrial

Relations Commission has statutory authority in this matter because Appellant’s claims involve

Ford’s actions after the incapacitation. We disagree. “It is well settled in the law that the post-

accident determination as to what ‘type’ or ‘sort of’ medical care that is required to be provided by

an employer under the [Workers’ Compensation Law] to an employee injured on the job, as being

reasonable under the circumstances, is within the exclusive province of the Division.” Burns v.

Employer Health Serv.’s, Inc., 976 S.W.2d 639, 643 (Mo. App. 1998). Pursuant to Section

287.140.1, RSMo 2016, “… the employee shall receive and the employer shall provide such

medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance

and medicines, as may reasonably be required after the injury or disability, to cure and relieve

from the effects of the injury.” (Emphasis added). Hence, if Mr. Ducoulombier was injured on

the job, Ford had a duty to provide reasonable relief under the circumstances. The cause of Mr.

Ducoulombier’s incapacitation was, therefore, relevant to understanding the extent to which Ford’s

action and/or inaction after Mr. Ducoulombier’s incapacitation fell within the purview of Section

287.140.

 As noted above, “[u]nder the primary jurisdiction doctrine, courts will not decide a

controversy involving a question within the [authority] of an administrative tribunal until after that

tribunal has rendered its decision: (1) where administrative knowledge and expertise are

demanded; (2) to determine technical, intricate fact questions; (3) where uniformity is important

 14
to the regulatory scheme.” Killian, 802 S.W.2d at 160. Determination of the existence of an

employer/employee relationship, or whether a claim might involve the employer/employee

relationship, is not a question requiring agency expertise. Id.; See also McCracken, 298 S.W.3d at

479 (“It is firmly established that the circuit court in which a personal injury claim is filed has the

authority to determine whether the claim involves the employer/employee relationship for

purposes of the Act.”) Hence, the circuit court had the authority to address Ford’s contention that

Appellant’s claims involved the employer/employee relationship thereby implicating the Workers’

Compensation Law. The circuit court did not, however, have the authority to determine whether

Mr. Ducoulombier’s injuries and death arose out of and in the course of that employment or from

another source. Killian, 802 S.W.2d at 160. Where claims involve the employer/employee

relationship, the Commission has exclusive statutory authority to determine whether alleged

injuries arose out of that relationship. Id. This is true even where the pleadings suggest that an

employer had a duty of care to the plaintiff arising from another source. Chang, 26 S.W.3d at 217.

 In State ex rel. Chang v. Ely, Brenda Valdivieso, a secretary for physical therapist Paul

Chang, who conducted his business from his home, slipped on Chang’s icy driveway and injured

her back. Id. at 216. Valdivieso filed a civil suit against Chang and his wife (also employed by

Chang’s corporation) alleging that Valdivieso was a “business invitee” of the Changs when injured

on their premises. Id. The petition alleged a dangerous condition on the premises which the

Changs should have remedied. Id. The Changs moved to dismiss, contending that Valdivieso’s

exclusive remedy for the injury was under the Workers’ Compensation Act because the alleged

negligent act was the failure to make the driveway safe. Id. The Changs argued that the immunity

provided by the Workers’ Compensation Law shielded them from individual liability in a common

 15
law negligence action. Id. The trial court denied the motion to dismiss, and the Changs applied

to this court for a Writ of Prohibition. Id.

 Upon consideration we noted that, although the suit against the Changs made no mention

of the Changs as employers, only landowners, Valdivieso was not on the Chang’s premises as a

business invitee; Valdivieso’s “presence on the premises was solely due to her employment.

Accordingly, the pleaded concept of a separate duty to her as a ‘business invitee’ disappears upon

inspection.” Id. at 217. We stated that, “In this case, even if there had been a general duty as

landowner to make the property safe for licensees, and if we were to consider Mrs. Valdivieso a

licensee, that duty would simply have been coextensive with the duty of the employer to make the

premises safe.” Id. at 218. We discussed that the Changs’ failure to keep the driveway safe was

“simply an alleged failure to exercise care to provide a reasonably safe work place” premised on

an employer’s responsibility for “the safety of the ways of ingress and egress” of their employees.

Id. at 217. We made absolute our preliminary order in prohibition, directing the circuit court to

dismiss the underlying action for lack of statutory authority. Id. at 218. We concluded that the

Changs “clearly enjoy[ed] the individual immunity provided by the Workers’ Compensation Act.”

Id.

 Based on the factual allegations set forth in Appellant’s pleadings, the same is true here.

Mr. Ducoulombier’s presence and purpose for being on Ford’s premises on February 25, 2016,

was solely due to his employment. As such, exclusive statutory authority to consider the cause

and extent of alleged injuries arising from Mr. Ducoulombier’s presence at his workplace lies with

the Labor and Industrial Relations Commission.

 Citing Hunicke v. Meramec Quarry Company, 172 S.W. 43 (Mo. 1914), and Kane v.

Chicago, Burlington & Quincy Railroad Company, 271 S.W.2d 518 (Mo. 1954), Appellant argues

 16
that Missouri has long recognized a civil cause of action for failure to render prompt medical

treatment to an employee by an employer, and that the proper authority to hear such a cause of

action is in fact the trial court and not the Division of Workers’ Compensation. We disagree.

Hunicke was decided in 1914, prior to the enactment of Missouri’s Workers’ Compensation Law

in 1925. See Peters v. Wady Industries, Inc., 489 S.W.3d 784, 791 (Mo. banc 2016). Even after

its enactment, because employers and employees could opt out of the workers’ compensation

statutory scheme until 1978, cases decided prior to that time lend little support for present-day

cases involving questions related to statutory authority:

 The enactment of the Missouri workmen’s compensation law in 1925
 altered the landscape of common law negligence actions against employers. It
 created a no-fault system of compensation for the employee under which an
 employer was liable irrespective of negligence in exchange for immunity against
 common law negligence actions. The workers’ compensation laws were intended
 to replace common law actions against employers for an employee’s work-related
 injuries. As initially adopted, however, employers and employees could opt out of
 the workers’ compensation statutory scheme and, when the employer opted in but
 the employee opted out, the employer could use certain defenses, including the
 fellow servant doctrine, in actions by injured employees. Following the repeal in
 1978 of the statute allowing employees and employers to opt out, such defenses by
 employers were no longer relevant, and employers enjoyed immunity from
 common law actions.

Id. (internal citations and quotation marks omitted).

 Kane v. Chicago, Burlington & Quincy Railroad Company did not involve Missouri

personal injury law at all; rather, it involved a railroad employee’s injury that was governed by the

Federal Employers’ Liability Act. 271 S.W.2d at 518-519. The Federal Employers’ Liability Act

“preempts an injured railroad employee’s state-law personal injury claims, creating a ‘uniform

federal law of liability.”’ Luman v. ITS Technologies & Logistics, LLC, 323 S.W.3d 821, 824 (Mo.

App. 2010). Hence, neither of these cases support Appellant’s contention that the proper authority

for hearing a claim that an employer allegedly failed to provide prompt emergency medical care

 17
to an incapacitated employee is with “the trial court and not the Division of Workers’

Compensation.”

 Conclusion

 We find that Appellant fails to establish substantial grounds for believing that manifest

injustice or miscarriage of justice occurred when the circuit court granted Ford’s motion for

summary judgment.6 Upon Ford raising the affirmative defense that the Workers’ Compensation

Law governed Appellant’s claims, and moving for summary judgment on that issue, the trial court

was tasked with determining whether Appellant’s claims involved the employer/employee

relationship. As Appellant’s petition alleged that Mr. Ducoulombier became incapacitated while

at work and thereafter suffered additional injury on Ford’s premises due to Ford’s negligence, we

find no evident, obvious, or clear error in the circuit court’s conclusion that Appellant’s claims

involved the employer/employee relationship such that the Labor and Industrial Relations

Commission had exclusive authority to determine whether Mr. Ducoulombier’s injury and death

arose out of and in the course of his employment.

 Appellant’s point on appeal is denied.

 The circuit court’s judgment is affirmed.

 Anthony Rex Gabbert, Judge

All concur.

 6
 Unlike in Cooper, 361 S.W.3d at 65-66, where the court found that a stay of the civil case, rather than
summary judgment, was appropriate to allow the Commission in the simultaneously pending workers’ compensation
case to decide the question of accidental injury, summary judgment was appropriate here as all parties acknowledge
that the workers’ compensation case in this matter had been dismissed with prejudice at the time of the summary
judgment ruling.

 18